JOSEPH DELFA, petitioner-appellant,

*v.*

ANGELINE DEF. DELFA, defendant-respondent.

[Submitted October 30th, 1942.  Decided January 22d, 1943.]

*Mr. William Ripley Cobb* and *Mr. Jacob L. Newman,* for the appellant.

*Mr. Mortimer Katz* and *Mr. William L. Vieser,* for the respondent.

The opinion of the court was delivered by

DONGES, J.

This is an appeal from a decree of the Court of Chancery, advised by Advisory Master Grosman, dismissing the appellant's petition for divorce, which alleged adultery on the part of the wife, and awarding his wife support on her counter-claim for maintenance.

The advisory master concluded that adultery was not established by the proofs.  With this conclusion we are in accord.

The parties were married August 23d, 1939, at which time the respondent was a widow 37 years of age with two children, aged 10 and 11 years, respectively.  Petitioner-appellant had likewise been married before and was then 53 years of age. They lived together for approximately a year, separating on August 29th, 1940.  The husband endeavored to show that his wife left him without cause and because, as he says she told him, she had somebody who would give her more money.

The respondent testified that, at the time of their marriage, it was agreed by the appellant that he would support her and her children. Accordingly, they moved into an apartment in a six-family house owned by appellant. She said he was most miserly, giving her sometimes $10 a week for household expenses, sometimes less and sometimes nothing; that appellant resented being required to support her children, and suggested and, finally, even insisted that she abandon her children. This she refused to do, and left her husband's home, taking the children with her. During the time she lived with appellant, respondent borrowed some money on life insurance and attempted to operate a dressmaking and hosiery store in order to get money for the adequate maintenance of herself and her children. This effort failed.

Respondent rented an apartment in Irvington, expecting her sister, who was about to be married, to share the apartment with her. Her sister's intended husband, however, insisted that they live alone. Finding herself with a larger place than she needed or could afford, respondent advertised a room for rent and the co-respondent, after viewing it, rented and occupied it. The proofs are clear that the respondent and the co-respondent had no previous acquaintance.

Appellant relies upon his own testimony and that of one Joseph Capello, who on two occasions accompanied him to the Irvington apartment of respondent. They testified that, by peeking through a window, they saw, on one occasion, the boarder eating at a table in his undershirt, and, on another occasion, saw him enter the kitchen and embrace and kiss the respondent. Both of these occurrences were said to have been in the presence of respondent's children. Both were denied.

There is also the testimony of the janitress of the building, who said she saw respondent in and about the apartment in her kimona, and said she was given to understand by respondent that Parrello was her husband. This was flatly denied.

It appeared that there was bad feeling on the part of this witness toward respondent. In addition, the mail box had both Parello's name upon it and the name of the respondent before her marriage to appellant, which was used by her, she

testified, because it was the name of her children by her prior marriage.

Parello denied any wrong-doing, as did respondent. The apartment appears to have had adequate facilities for the boarder to keep entirely by himself, and there is nothing in the plan of the apartment to require a finding of undue intimacy.

The advisory master was not favorably impressed by the demeanor of the appellant and his witnesses on the stand. He was of opinion that respondent was entitled to greater credibility.

From a reading of the testimony, without the benefit of an observation of the witnesses, it clearly appears that appellant has failed to establish the serious charge of adultery with that degree of proof that is required. There, is nothing unusual or improper in having a boarder in the house. Her children were with her. The two names were displayed on the mail box. If it were established that the co-respondent ate in his undershirt, although otherwise fully clothed, in the presence of respondent and her children, this is not such an unusual circumstance as to characterize it as proof of adultery. This leaves the testimony of the one embrace and kiss as the only remaining incident to establish the charge. This testimony was from appellant and his personal friend, and was thoroughly discredited. Weighing their testimony against the contradictory testimony, we conclude that the conclusions of the advisory master were fully sustained.

In this situation the decree for maintenance was likewise warranted.

The decree is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 14.

*For reversal*—None.